UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRENDAN MCKOWN,

    Plaintiff,

v.

SIMON PROPERTY GROUP, INC.,
d/b/a TACOMA MALL,

    Defendant.

CASE NO. C08-5754BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Simon Property Group, Inc.'s ("Simon") motion for summary judgment (Dkt. 75).[1] The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part Simon's motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On November 12, 2008, Plaintiff Brendan McKown ("McKown") filed the complaint in this action in state court against Simon and IPC. Dkt. 1 at 4-12. On

---

[1] Although the instant motion was filed by Simon and Defendant IPC International Corporation ("IPC"), on December 29, 2010, the Court issued an order granting IPC's separate motion for summary judgment (Dkt. 74) and terminated IPC as a party to this action. Dkt. 83. Therefore, for purposes of addressing the instant motion for summary judgment, the Court will refer only to Simon.

ORDER - 1

December 17, 2008, Simon removed the above-captioned case to this Court. Dkt. 1 at 1-3. In his complaint, McKown alleges that Simon: (1) failed to protect tenants and business invitees from foreseeable criminal conduct; (2) negligently rendered security measures and services; (3) negligently performed an undertaken duty; (4) negligently hired and/or failed to employ security personnel; and (5) breached an express and/or implied contract. Dkt. 1 at 7-10.

On November 10, 2010, Simon filed a motion for summary judgment seeking dismissal of McKown's claims asserting that the criminal acts involved were unforeseeable as a matter of law and that Simon's conduct was not the proximate cause of McKown's injuries. Dkt. 75. On November 29, 2010, McKown responded (Dkt. 81) and on December 3, 2010, Simon replied (Dkt. 82).

## II. FACTUAL BACKGROUND

**A.  Maldonado**

On November 20, 2005, Dominick S. Maldonado ("Maldonado") walked into the Tacoma Mall wearing a trench coat, under which he was concealing an MAK-90 rifle and an Intertec Tec-9 pistol, and carrying a guitar case containing ammunition. Dkt. 81-1 at 6, 10. Prior to entering the mall, Maldonado made a phone call to 911 informing the operator that he was carrying two weapons and that he was going to begin shooting. *Id*. at 6. The 911 operator then asked Maldonado where he was located and he answered, "follow the screams." *Id*. The 911 operator asked him the same question several more times to which he gave the same answer. The 911 operator then asked Maldonado for his name and he hung up the phone. *Id*.

After entering the mall, Maldonado stopped by a soda machine to load his rifle (Dkt. 81-1 at 12), passed by a T-Mobile kiosk multiple times and then began shooting. (Dkt. 75-1 at 69-74, 85-88). Over a period of approximately eight minutes, Maldonado shot seven people. Dkt. 75-1 at 54-57, 107. The last person Maldonado shot was McKown. *Id*. at 107. Next, Maldonado entered a Sam Goody store, took four people

ORDER - 2

1  hostage, again called 911 and demanded to speak to a police negotiator. *Id*. at 54-57, 63.
2  Maldonado held the hostages in the Sam Goody store for several hours and was
3  eventually taken into police custody. Dkts. 75-1 at 110, 114 & 81-1 at 10.

**B.  McKown**

On the day the shooting occurred, McKown was working as an assistant manager at Excalibur Cutlery, a store located inside the Tacoma Mall. Dkt. 75-1 at 99-100. At approximately noon, McKown left Excalibur to take the previous day's deposits to a bank deposit box located at the opposite end of the mall. *Id*. at 101-02. On his way to the deposit box, McKown stopped inside the Kits Camera store to visit some friends and while exiting the store heard sounds that he immediately recognized as gunshots. *Id*. at 102-05. After hearing the gunshots, McKown drew the handgun he was carrying in his waistband. *Id*. at 105. After several minutes of not hearing any additional gunshots, McKown put the handgun back in his waistband and continued standing near the entrance to Kits Camera. Dkt. 81-1 at 65. Maldonado then approached the Kits Cameras store and shot McKown several times. Dkts. 75-1 at 107 & 81-1 at 66.

**C.  Simon and IPC**

Simon is the owner of the Tacoma Mall, a 1.3-million-square-foot shopping center located in Tacoma, Washington. IPC is a security company who was hired by Simon to provide uniformed, unarmed security personnel at the Tacoma Mall. At the time of the shooting, the Tacoma Mall had an intercom system that IPC security guards were not trained to use, was somewhat inaudible, and was inaccessible to the security guards on the weekends. Dkt. 81-1 at 20-21. At the time of the shooting, the Tacoma Mall did not have security cameras or a surveillance system, with the exception of IPC's unarmed security guards. *See* Dkts. 81-1 at 55-56, 98 & 84 at 136. IPC's policy in an emergency was to contact the Tacoma Police Department using a radio in IPC's office that was provided to the security guards for the purpose of contacting the police. Dkt. 81-1 at 45.

Simon is unaware of any incident, prior to November 20, 2005, in which someone was shot at the Tacoma Mall. Dkt. 75-1 at 128-29. Prior to November 20, 2005, Simon had never had any contact with Maldonado (*id*.) and Maldonado stated in a deposition that he rarely went to the Tacoma Mall (*id*. at 132-33). At the time of the shooting, there were four IPC security guards on duty at the mall. Dkt. 84 at 136. A mall patron knocked on the door of the IPC office and informed the security guard in the office that a shooting was taking place. *Id*. at 137-38. The IPC security guard then radioed the local police department to inform the dispatcher of the shooting. *Id*. at 138. The parties dispute the amount of time that elapsed between the start of the shooting and the IPC security guard reporting the shooting to the Tacoma Police Department.

## III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

1  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d
2  626, 630 (9th Cir. 1987).

3        The determination of the existence of a material fact is often a close question. The
4  Court must consider the substantive evidentiary burden that the nonmoving party must
5  meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477
6  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual
7  issues of controversy in favor of the nonmoving party only when the facts specifically
8  attested by that party contradict facts specifically attested by the moving party. The
9  nonmoving party may not merely state that it will discredit the moving party's evidence at
10 trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec.*
11 *Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific
12 statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan*
13 *v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

14 **B.  Contract Claims**

15       Simon seeks summary judgment on McKown's contract claim under Simon's
16 contract with IPC for IPC to provide security services at the Tacoma Mall. Dkt. 75 at 2,
17 fn. 1. According to Simon, the only basis for McKown to bring such a contract claim
18 would be based on a theory that McKown is a third-party beneficiary of Simon's contract
19 with IPC. *Id*. In his opposition to Simon's motion for summary judgment, McKown does
20 not respond to Simon's motion regarding the contract cause of action. *See* Dkt. 81.

21       "The creation of a third party beneficiary contract requires that the parties intend
22 that the promisor assume a direct obligation to the intended beneficiary at the time they
23 enter into the contract." *Burke & Thomas, Inc. v. Int'l Org. of Masters*, 92 Wn.2d 762,
24 767 (1979). In his response to IPC's motion, McKown cites *Lonsdale v. Chesterfield*, 99
25 Wn.2d 353, 361 (1983), for the proposition that "[i]f the terms of the contract necessarily
26 require the promisor to confer a benefit upon a third person, then the contract, and hence
27 the parties thereto, contemplate a benefit to the third person." Dkt. 78 at 9-10 (quoting

28

*Lonsdale*, 99 Wn. 2d at 361). However, in *Lonsdale*, the Washington Supreme Court specifically stated that "[t]he intent which is a prerequisite of the [third-party] beneficiary's right to sue is not a desire or purpose to confer a particular benefit upon him, nor a desire to advance his interests, but an *intent that the promisor shall assume a direct obligation to him.*" *Lonsdale*, 99 Wn. 2d at 361 (quoting *Vikingstad v. Baggott*, 46 Wn.2d 494, 496-97 (1955) (emphasis provided by *Lonsdale* opinion) (internal quotation marks omitted)).

Washington courts follow the objective manifestation theory of contracts in which the mutual assent of the parties is determined from their outward manifestations and "the unexpressed, subjective intentions of the parties are irrelevant." *Olson v. The Bon, Inc.*, 144 Wn. App. 627, 633-34. Here, as the Court stated in its previous order granting summary judgment in favor of IPC based on the same contract at issue, the only outward manifestation is the written contract. *See* Dkt. 83. In its order granting IPC's motion for summary judgment, the Court concluded that McKown failed to present evidence that IPC intended to assume an obligation to McKown. *Id*. Similarly, here, McKown has failed to present any evidence to show that Simon intended to assume a direct obligation to McKown, or any of its invitees or employees, and therefore he has no right to sue as a third-party beneficiary under Simon's contract with IPC. Therefore, Simon's motion for summary judgment is granted in part to the extent that McKown's claims for breach of contract against Simon should be dismissed with prejudice.

**C.     Negligence**

Four of McKown's five causes of action asserted against Simon are based in negligence. Under Washington law, a negligence cause of action consists of the following elements: "(1) the existence of a duty owed to the complaining party; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury." *Christen v. Lee*, 113 Wn.2d 479, 488 (1989).

"Under traditional tort law, absent affirmative conduct or a special relationship, no legal duty to come to the aid of a stranger exists." *Folsom v. Burger King*, 135 Wn.2d 658, 674 (1998) (citing W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 56 (5th ed. 1984)).  In addition, "[t]he general rule at common law is that a private person does not have a duty to protect others from the criminal acts of third parties." *Hutchins v. 1001 Fourth Ave. Associates*, 116 Wn.2d 217, 223 (1991).  However, in *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 202–03, the Washington Supreme Court specifically held that an owner or occupier of land owes its business invitees a duty of reasonable care to protect them from reasonably foreseeable criminal conduct by third persons on the premises.

Here, McKown alleges that Simon was negligent by failing to take reasonable steps to protect him and others from the danger of a shooting occurring in the Tacoma Mall and that Simon breached the relevant standard of care in the following ways:

> (1) They failed to use a professional security advisor to accurately determine the level of security needed in the mall, and they made not other effort to study the themes and trends arising out of crimes committed in the mall.
> (2) They used a non-standardized, paper-based security management system to track past crimes and failed to coordinate with the police department to prevent future crimes
> (3) Despite that they had seen six shootings in the previous thirteen years and that the mall was built in an area with a high crime rate, the defendants' 1.3 million square foot mall had no closed-caption surveillance and no policy for responding to a shooter or terrorist attack, other than to "call police."
> (4) They budgeted only for unarmed security staff and only had three of them on duty in the 1.3 million square moot fall at lunchtime on a Sunday during the holiday season.
> (5) They did not hire off-duty, uniformed, armed police officers, unlike most other malls in the region and of their size.  Their security director was aware of the need for a police presence: he spoke of goal to bring back police officers, a presence the Mall had abandoned before the shooting.
> (6) They failed to train their security on how to evacuate mall patrons in an emergency and failed to maintain a policy for responding to an active shooter or similar terrorist attack.
> (7) They failed to have an audible public announcement system, they failed to train their security on how to use their (inaudible) public announcement system to warn patrons of imminent threats to their safety, and they failed to give their security access to that public announcement system because it was kept under lock and key.

(8) They failed to ensure that their security staff abided by their own policy of maintaining a constant presence in the mall.
(9) They positioned their security office in a remote location on the far outskirts of the mall, a location that required patrons and security officers to exit the mall, hike along its outer wall, and reenter from outdoors.
(10) As reflected in Maldonado's statements to the police that are cited in the defendants's motion, he knew that the mall was a soft target and he knew that is security was also soft.

Dkt. 81 at 8-9.

### 1.   Forseeability

Forseeability limits the scope of the duty owed to invitees by the owner or occupier of land. *See Christen*, 113 Wn. 2d at 492.  "[T]o establish foreseeability 'the harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed by the defendant.'" *Id*. (quoting *Maltman v. Sauer*, 84 Wn. 2d 975, 981 (1975)).  This limitation ensures that there is some end to the legal consequences of a negligent act. *Id*.  "Forseeability is normally an issue for the jury, but it will be decided as a matter of law where reasonable minds cannot differ." *Christen*, 113 Wn. 2d at 492 (citing *Rikstad v. Holmberg*, 76 Wn. 2d 265, 268-69 (1969)).

Washington courts have held that "an intervening act [including one that is criminal in nature,] is not foreseeable if it is 'so highly extraordinary or improbable as to be wholly beyond the range of expectability.'" *Christen*, 113 Wn.2d at 492 (quoting *McLeod v. Grant Cnty. Sch. Dist. 128*, 42 Wn.2d 316, 323 (1953)).  The Washington Supreme Court's further explanation of this principle in *Rikstad* is instructive:

> It is not, however, the unusualness of the act that resulted in injury to plaintiff that is the test of foreseeability, but whether the result of the act is within the ambit of the hazards covered by the duty imposed upon defendant.
>
> \* \* \*
>
> The courts are perfectly accurate in declaring that there can be no liability where the harm is unforeseeable, if 'foreseeability' refers to the general type of harm sustained. It is literally true that there is no liability for damage that falls entirely outside the general threat of harm which made the conduct of the actor negligent. The sequence of events, of course, need not be foreseeable.  The manner in which the risk culminates in harm may be unusual, improbable and highly unexpectable, from the point of view of the actor at the time of his conduct.  And yet, if the harm suffered falls within

>the general danger area, there may be liability, provided other requisites of legal causation are present.

76 Wn. 2d at 269 (quoting Harper, Law of Torts, 14, § 7; 2 Restatement, Torts, 1173, § 435).

Here, Simon concedes, for purposes of its motion for summary judgment, that it owed a duty to McKown, as one of its business invitees, to protect him from reasonably forseeable criminal conduct. *See* Dkt. 75 at 10, fn. 6; *see also Nivens*, 133 Wn. 2d at 202-03. However, Simon argues that Maldonado's actions in shooting at strangers in the Tacoma Mall were not reasonably forseeable as a matter of law and therefore Simon had no duty to prevent Maldonado from shooting McKown. Dkt. 75 at 9-14. McKown maintains that a reasonable jury could conclude that Maldonado's actions were reasonably forseeable because a mall shooting fell within the general field of forseeable danger. Dkt. 81 at 13-17. Therefore, McKown argues, the issue of foreseeability is a question for the jury and Simon's motion should be denied. *Id*. at 17.

The Court concludes that, based on the evidence on record, a reasonable jury could find that McKown's injuries were the result of reasonably foreseeable criminal conduct. Based on the evidence, the Court cannot conclude that Maldonado's shooting of McKown was "so highly extraordinary or improbable as to be wholly beyond the range of expectability" (*see McLeod*, 42 Wn.2d at 323), and therefore cannot conclude that the shooting was unforeseeable as a matter of law. Whether McKown's injuries were "within the ambit of the hazards covered by the duty imposed upon" Simon will be a question of fact for the jury. *See Rikstad*, 76 Wn.2d at 269.

### 2. Proximate Cause

To prove a negligence cause of action, a plaintiff must show that the breach of duty is the proximate cause of the plaintiff's injuries. *Petersen*, 100 Wn.2d at 435. Proximate cause consists of two elements: cause in fact and legal causation. *Taggart v. State*, 118 Wn. 2d 195, 225 (1992) (citing *Hartley v. State*, 103 Wn.2d 768, 777 (1985)). "Cause in fact concerns the 'but for' consequences of an act: those events the act [or

omission] produced in a direct, unbroken sequence, and which would not have resulted had the act [or omission] not occurred." *Id*. at 226 (citing *Hartley*, 103 Wn.2d at 778). "Legal causation rests on considerations of policy and common sense as to how far the defendant's responsibility for the consequences of its actions should extend." *Id*. (citing *Hartley*, 103 Wn.2d at 779).

### a.  Cause in Fact

"If an event would have occurred regardless of a defendant's conduct, that conduct is not the [cause in fact] of the plaintiff's injury." *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 74 (1984). To survive summary judgment on the issue of cause in fact, a plaintiff must demonstrate that a reasonable jury might conclude that if the defendant had taken the steps plaintiff asserts were necessary to satisfy defendant's duty, then plaintiff's injury would not have occurred. *See Taggart*, 118 Wn.2d at 227.

"As a determination of what actually occurred, cause in fact is generally left to the jury . . . such questions of fact are not appropriately determined on summary judgment unless but one reasonable conclusion possible." *Hartley*, 103 Wn.2d at 778. Moreover, in *Petersen*, the Washington Supreme Court stated that:

> We have consistently held that "the question of [cause in fact] is for the jury, and it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that it may be a question of law for the court."

100 Wn.2d at 436 (quoting *Mathers v. Stephens*, 22 Wn.2d 364, 370 (1945)); *see Kim v. Budget Rent-a-Car*, 143 Wn.2d 190, 203 (2001) (stating that "[t]he question of cause in fact is normally left to the jury, however, if reasonable minds could not differ, this factual question may be determined as a matter of law" (internal quotation marks omitted)).

Here, Simon argues that, regardless of the foreseeability issue, it is entitled to summary judgment because McKown cannot establish that any act or omission on the part of Simon was a cause in fact of his injuries. Dkt. 75 at 15-17. McKown contends that Simon is not entitled to summary judgment because a reasonable jury could find that if Simon had taken sufficient precautions and provided adequate security, it could have:

ORDER - 10

(1) deterred Maldonado from choosing Simon's mall in the first place, (2) seen Maldonado coming and warned McKown and its customers to evacuate; and/or (3) told McKown and its customers where Maldonado was located, that the police were on their way, and that McKown and the customers needed to evacuate. Dkt. 81 at 17-20.

The Court concludes that, based on the evidence in the record, a reasonable jury could find that Simon's failure to implement certain security measures, including but not limited to a failing to provide an accessible and functioning intercom system and failing to provide security cameras or a surveillance system, were the cause in fact of McKown's injuries. McKown specifically stated in his deposition that he would have exited the mall during the shooting, or during the period of time in which he stopped hearing gunshots, if he had known that the shooter was still at large and had been instructed to exit by the mall security over an announcement system. Dkt. 81-1 at 65-66. Although Simon disputes McKown's deposition testimony and argues that the facts indicate that an announcement would not have prevented McKown from being shot, such issues are questions of material fact to be decided by the jury. Therefore, the Court cannot conclude as a matter of law that Simon was not the cause in fact of McKown's injuries. *See Petersen*, 100 Wn.2d at 436 ("it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that [cause in fact] may be a question of law for the court").

    **b.**   **Legal Causation**

Legal causation "involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact. If the factual elements of the tort are proved, determination of legal liability will be dependent on 'mixed considerations of logic, common sense, justice policy, and precedent.'" *Hartley*, 103 Wn.2d at 779 (quoting *King v. Seattle*, 84 Wn.2d 239, 250 (1974) (overruled on other grounds by *Seattle v. Blume*, 134 Wn. 2d 243 (1997))). In *Taggart*, the Washington Supreme Court stated that "[t]he question of legal causation is so intertwined with the question of duty that the

former can be answered by addressing the latter." 118 Wn. 2d at 226 (citing *Hartley*, 103 Wn.2d at 779-80).

Simon maintains that logic, common sense, justice, policy and precedent do not support a finding of legal cause in this case such that Simon should be held liable for the actions of a heavily armed gunman. Dkt. 75 at 17. Simon acknowledges that there are no "directly analogous reported cases where a landowner has been held liable for the actions of a deranged gunman." *Id*. Simon cites to a California case where the court of appeals held that there was no "causal nexus," or legal cause, between the defendant restaurant's failure to hire security guards and the injuries and deaths resulting from "a maniacal, suicidal assailant unconcerned with his own safety, bent on committing mass murder." Dkt. 75 at 18 (citing *Lopez v. McDonald's Corp.*, 193 Cal. App. 3d 495, 516-17 (1987)). In response, McKown cites to *Taggart* in which the Washington Supreme Court stated that "[t]he question of legal causation is so intertwined with the question of duty that the former can be answered by addressing the latter." Dkt. 81 at 18 (quoting 118 Wn.2d at 226). In other words, it appears to be McKown's position that if Simon is found to have had a duty to protect McKown, in that a jury finds Maldonado's actions to be reasonably foreseeable criminal conduct, that, under *Taggart*, Simon would also be considered a legal cause of McKown's injuries.

Washington courts have not held that an owner or occupier of land is absolved of liability under its duty to provide reasonable care to protect business invitees from reasonably foreseeable criminal conduct by third persons on the premises, when an invitee's injuries are the result of a random shooting on the property. Accordingly, this Court will not do so here. In *Taggart*, the Washington Supreme Court stated that "[t]he question of legal causation is so intertwined with the question of duty that the former can be answered by addressing the latter." Dkt. 81 at 18 (quoting 118 Wn.2d at 226). In other words, if Simon is found to have had a duty to protect McKown, in that a jury finds McKown's injuries to be the result of reasonably foreseeable criminal conduct, under

*Taggart*, Simon would also be considered a legal cause of McKown's injuries. Therefore, the Court cannot conclude, as a matter of law, that Simon is not a legal cause of McKown's injuries.

**D.   Conclusion**

For the reasons stated above, the Court concludes that Simon's motion for summary judgment should be granted in part to the extent that McKown's claims for breach of contract against Simon should be dismissed with prejudice and denied in part with respect to McKown's negligence claims.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Simon's motion for summary judgment (Dkt. 75) is **GRANTED in part** and **DENIED in part** and McKown's contract claims against Simon are **DISMISSED with prejudice**.

DATED this 7th day of January, 2011.

BENJAMIN H. SETTLE
United States District Judge