UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRENDAN MCKOWN,<br><br>        Plaintiff,<br><br>  v.<br><br>SIMON PROPERTY GROUP, INC.,<br>d/b/a TACOMA MALL,<br><br>        Defendant. | CASE NO. C08-5754BHS<br><br>ORDER |

This matter comes before the Court on Defendant Simon Property Group, Inc.'s ("Simon") motion for reconsideration. Dkt. 94. The Court has considered the pleadings filed in support of and opposition to the motion and the remainder of the file and hereby grants Simon's motion, vacates in part the Court's previous order on Simon's motion for summary judgment, and grants Simon's motion for summary judgment for the reasons stated herein.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff Brendan McKown ("McKown") filed the instant action in state court on November 12, 2008. Dkt. 1 at 4-12. On November 10, 2010, Simon filed its motion for summary judgment. Dkt. 75. On January 7, 2011, the Court granted in part and denied in part Simon's motion. Dkt. 86. On January 20, 2011, Simon filed its motion for reconsideration of the Court's order. Dkt. 94. On January 27, 2011, the Court requested a response from McKown to Simon's motion for reconsideration. Dkt. 97. On February

ORDER - 1

1  7, 2011, McKown filed a response to the motion (Dkt. 98) and on February 10, 2011,
2  Simon replied (Dkt. 99). On March 22, 2011, the Court issued an order granting in part
3  Simon's motion for reconsideration to the extent that the Court requested additional
4  briefing from the parties regarding McKown's presentation of evidence of relevant prior
5  similar acts occurring at the Tacoma Mall. Dkt. 100. On April 4, 2011, McKown filed its
6  supplemental brief (Dkt. 101) and on April 8, 2011, Simon responded (Dkt. 102).

7      For a more complete factual and procedural background, see the Court's orders on
8  Defendant IPC International Corporation's and Simon's motions for summary judgment.
9  Dkts. 83 & 86.

## II. DISCUSSION

11  Simon's motion for reconsideration moved the Court to reconsider its order
12  granting in part and denying in part Simon's motion for summary judgment. Dkt. 94.
13  Specifically, Simon requested that the Court reconsider its conclusion that a reasonable
14  jury could find that McKown's injuries were the result of reasonably foreseeable criminal
15  conduct. *Id*. In its March 22, 2011 order ("March 22 order"), the Court concluded that
16  Simon had shown manifest error in the Court's order on summary judgment regarding the
17  foreseeability of McKown's injuries. Dkt. 100.

18      As an initial matter, the Court notes that, contrary to McKown's statement in his
19  supplemental brief, the Court's March 22 order did not state that the Court was upholding
20  its prior ruling that a jury must decide whether the shooting was within the ambit of
21  hazards covered by Simon's general duty to McKown. *See* Dkt. 101. Rather, the Court's
22  March 22 order simply quoted the section on foreseeability from the Court's January 7,
23  2011, order on Simon's motion for summary judgment to show what the Court had
24  previously ruled. *See* Dkt. 100 (issue of foreseeability discussed under the heading
25  "Court's Order on Summary Judgment Regarding Foreseeability").

ORDER - 2

**A.     Washington Appellate Case Law on Foreseeability of Criminal Conduct**

In Washington, "a business owes a duty to its invitees to protect them from imminent criminal harm and reasonably foreseeable criminal conduct by third persons." *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 205 (1997). In denying Simon's motion and concluding that the foreseeability of McKown's injuries resulting from Mr. Maldonado's criminal conduct was a question for the jury, the Court relied on *Nivens*, as well as other Washington Supreme Court negligence cases that did not involve business owners and their invitees. Dkt. 86 at 7-9. In its motion for reconsideration, Simon argues that the Court erred in not relying on the "prior similar acts on the premises test" set forth in multiple Washington appellate court cases. Dkt. 94 at 5. The test states that there is an issue for the jury as to whether the third party's criminal conduct is reasonably foreseeable only if plaintiff presents competent evidence that similar criminal conduct has occurred on the premises in the past. *Id.* (citing *Wilbert v. Metro. Park Dist.*, 90 Wn. App. 304, 308 (1998); *Raider v. Greyhound Lines*, 94 Wn. App. 816, 819-20 (1999); *Fuentes v. Port of Seattle*, 119 Wn. App. 864 (2003); and *Craig v. Washington Trust Bank*, 94 Wn. App. 820 (1999)).

Although the Court is not bound by these appellate court cases, the Ninth Circuit has held that "where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." *Nelson v. City of Irvine*, 143 F.3d 1196, 1206-07 (9th Cir. 1998). The Court is unaware of, and the parties have not directed the Court's attention to, a post-*Nivens* case in which the Washington Supreme Court considered the issue of foreseeability on facts analogous to those present in the instant action. Thus, the Court is obligated to follow the decisions of the Washington Appellate Courts.

As the Court stated in its March 22 order, having considered the Washington appellate cases cited by Simon, the lack of convincing evidence that the Washington Supreme Court would decide these issues differently, and the lack of evidence of prior

ORDER - 3

1 similar acts occurring on the premises presented by McKown in his opposition to Simon's
2 motion for summary judgment, the Court was inclined to vacate its previous order and
3 grant Simon's motion for summary judgment. Dkt. 100.  The Court, however, provided
4 McKown an opportunity to present evidence involving prior similar acts occurring at the
5 Tacoma Mall. *Id*.  Both parties submitted supplemental briefing on the issue of prior
6 similar acts (Dkts. 101 & 102), which the Court will now consider.

In McKown's supplemental brief, he includes descriptions of six shootings and three other incidents involving guns that occurred "at the Tacoma Mall" between 1992 and 2005:

> In May 1992, mall security ejected two groups of men who were arguing inside the Tacoma Mall. As one group waited at the Mall's bus center, the other group drove by and fired six to eight shots.
> In November 1992, a young man was shot several times in the Tacoma Mall parking lot. His friends drug him through the Mall, leaving a trail of blood.
> In March 1993, another young man was shot in the Tacoma Mall parking lot as he walked up to a car. The wounded man staggered into the Mall.  In its news report of the shooting, the News Tribune noted that three months earlier a man had reported to the police that he had been robbed at gunpoint outside the Sears store at the Mall.
> In August 1994, up to thirteen shots were fired at the Tacoma Mall. The News Tribune reported that "[b]ullets flew inside the Tacoma Mall on Saturday, hitting within feet of scattering shoppers."  The Pierce County prosecutor testified that "three uninvolved witnesses were in the direct line of fire and they all dove for cover." She also noted that "[t]here were 13 shall casings found in the parking lot at the Mall and one entrance door was shattered. At least five bullets struck the entrance area of the Mall."  When one of the shooters was sentenced, he was ordered to pay restitution to the Tacoma Mall and was ordered to have no contact with the Tacoma Mall.
> In October 1996, a gunman shot and wounded a man as he ran into the lobby of the movie theater at the Tacoma Mall. The man did not know who shot him. In response to the shooting, the Tacoma Mall's managers told the News Tribune that they had implemented a "crisis-management plan" and intended to hold a meeting with the Mall's owners "to review security measures to determine if they can be improved."
> In March 2000, five youths were arrested after they fired shots in the Tacoma Mall parking lot.
> In November 2001, Tacoma Police responded to a woman who was carjacked at gunpoint in the parking lot of the Tacoma Mall.
> In March 2003, Tacoma Police responded to a man who was robbed at gunpoint in the Tacoma Mall parking lot while waiting for his girlfriend.
> In February 2005, Tacoma Police responded to a man who had a gun pointed at him in the Tacoma Mall parking lot.

Dkt. 101 at 2-3.

ORDER - 4

1    Despite the admissibility issues of this information, McKown argues that these
2 incidents constitute competent evidence that prior acts, sufficiently similar to
3 Maldonado's shooting of McKown and others, have occurred at the Tacoma Mall. *Id*. at
4 7-10. Simon maintains that the incidents referenced by McKown do not constitute
5 evidence of "previous acts of similar violence on the premises" under Washington
6 appellate case law. Dkt. 102 at 3 (quoting *Wilbert*, 90 Wn. App. at 310). Specifically,
7 Simon contends that there are significant differences in the nature, scale, and location
8 between the crimes referenced by McKown and Maldonado's shooting, as well as a
9 remoteness in time in which the prior six shootings occurred (between five and thirteen
10 years before the Maldonado shooting). *Id*. The Court agrees with Simon.

11   In *Raider*, the court held that the racially-motivated shooting occurring at a bus
12 station was unforeseeable as a matter of law because the plaintiff failed to present
13 evidence "that similar racially motivated conduct" had previously occurred at the station.
14 94 Wn. App. at 819-20. In *Wilbert*, the court concluded that the shooting of a patron at a
15 dance was unforeseeable as a matter of law because evidence of "a number of unruly,
16 aggressive, vulgar young people at the dance" and fights occurring earlier in the night
17 were insufficient to show "that there had been similarly violent episodes" on the premises
18 in the past and thus, the shooting was unforeseeable as a matter of law. 90 Wn. App. at
19 307, 309-10. In *Fuentes*, the court held that the plaintiff's evidence of car prowlers
20 working unoccupied cars parked in the airport parking garage, as well as crime statistics
21 that included a report "stating that as of 1994, a passenger at Seattle-Tacoma International
22 Airport is more likely to be victim of a crime than at any other comparable airport in the
23 United States," was insufficient, as a matter of law, to create "foreseeability of
24 kidnapping or car jackings of occupied cars at the pick-up drive." 119 Wn. App. at 870-
25 71 (internal quotation marks omitted). In *Craig*, the court concluded that the bank
26 custodian's injury occurring in the alley behind the bank was unforeseeable as a matter of
27 law despite evidence that the custodian was often afraid to go into the alley and transients
28

ORDER - 5

1  occasionally loitered near the bank building. 94 Wn. App. at 828. However, in *Johnson
2  v. State*, 77 Wn. App. 934, 943 (1995), the court held that the issue of foreseeability was a
3  question for the jury based on "numerous crimes taking place on campus each year,"
4  where the plaintiff, who was assaulted and raped on the defendant university's campus,
5  presented evidence of eleven incidents of rape, as well as seven robberies and 200
6  assaults, that occurred on the campus in the three years preceding her injuries. *See* Dkt.
7  94 at 14.

In this case, the parties do not dispute that the injury to McKown occurred when Maldonado walked into the Tacoma Mall, loaded his two firearms, and began shooting mall patrons at random. *See* Dkt. 81-1. Such a random act of violence is more analogous to the evidence presented in *Wilbert* and its progeny than to the competent evidence of multiple similar crimes that was present in *Johnson*. First, although McKown has referenced nine separate incidents in support of his foreseeability argument, such incidents date back as far as thirteen years before Maldonado's shooting, and the most recent shooting incident occurred five years before McKown was shot. Second, the location of the incidents referenced by McKown all occurred in a parking lot at or near the Tacoma Mall, rather than inside the building, although one incident eleven years before the Maldonado shooting involved bullets striking the "entrance area" of the mall. Third, the nature of the incidents referenced by McKown are instances where the shooters, or those holding firearms, knew the victims or at the very least directed the shots or firearms toward a specific person. In addition, at least three of the six shooting incidents occurred after an argument had taken place between the shooter and the victim.

Although there are no specific factors to consider when analyzing whether a party has provided competent evidence of prior similar acts on the premise, the Court concludes that McKown has failed to submit competent evidence of random acts of indiscriminate shootings on Simon's premises. Therefore, the Court should grant Simon's motion for summary judgment on McKown's negligence claims.

**B.     Simon's Duty**

In his supplemental briefing, McKown argues that regardless of the Court's conclusion whether McKown has provided competent evidence of prior similar acts on the issue of the "duty to observe," a question for the jury remains whether Simon breached its "duty to intervene" once Maldonado started shooting in the mall. Dkt. 101 at 6-9.  In other words, McKown argues that Simon may not have had a duty to observe an event because it was unforeseeable, but Simon may have had a duty to protect an invitee once the unforeseeable event occurred.  The Court recognizes that a duty to observe and a duty to intervene regarding third-party criminal conduct for owners or occupiers of land was discussed in dicta in the Washington appellate decision of *Nivens v. 7-11 Hoagy's Corner*, 83 Wn. App. 33, 45-46 (1996).  In that opinion, the court stated that the duty to observe is one of providing "reasonable care to observe activity on the premises" and "may exist whenever the premises are open to the public," while the duty to intervene "arises only when a reasonable person under the same circumstances as the defendant would perceive that unreasonable conduct by a third person is impending or occurring . . . ." *Id*.  McKown, however, has failed to provided authority for the proposition that Washington courts recognize a separate test of foreseeability for the duty to observe as opposed to the duty to intervene.

In contrast to McKnown's proposition, the Restatement of Torts provides that foreseeability is a prerequisite for prevention as well as protection.  The relevant portion reads as follows:

> If the place or character of [a possessor of land's] business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Restatement (Second) of Torts § 344.  The business owner must be found to "reasonably anticipate careless or criminal conduct" before either the "duty to take precautions against it" or the duty "to provide a reasonably sufficient number of servants to afford a

ORDER - 7

1 reasonable protection" arises.  Therefore, the Court finds that McKnown's proposition that the foreseeability test only applies to the duty to prevent is without merit.

### III. ORDER

Therefore, the Court hereby **ORDERS** that Simon's motion for reconsideration (Dkt. 94) is **GRANTED** to the extent that the Court's order on Simon's motion for summary judgment (Dkt. 86) is **VACATED in part** with respect to its holding on foreseeability and denial of Simon's motion and thus, Simon's motion for summary judgment (Dkt. 75) is **GRANTED**.  Accordingly, McKown's negligence claims against Simon are **DISMISSED with prejudice** and this action is terminated.

DATED this 4th day of May, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 8