UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRENDAN MCKOWN,

    Plaintiff,

v.

SIMON PROPERTY GROUP, INC. and
IPC INTERNATIONAL CORPORATION,

    Defendants.

CASE NO. C08-5754 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

This matter comes before the Court on Defendants IPC International Corporation ("IPC") and Simon Property Group, Inc.'s ("Simon") (collectively "Defendants") motions for summary judgment (Dkts. 187, 189). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants in part and denies in part the motions for the reasons stated herein.

## I. PROCEDURAL HISTORY

On November 12, 2008, Plaintiff Brendan McKown ("McKown") filed a complaint against Defendants in Pierce County Superior Court for the State of Washington. Dkt. 2. McKown asserts causes of action against Defendants for premises liability, negligent failure to provide adequate security, negligent performance of duty,

negligent hiring and/or failure to provide security personnel, and breach of contract. *Id*. On December 17, 2008, Defendants removed the matter to this Court. Dkt. 1.

After the entry of summary judgment, an appeal, and the Washington Supreme Court answering certified questions, the Ninth Circuit remanded the matter for further proceedings. *See McKown v. Simon Prop. Grp., Inc.*, 182 Wn.2d 752 (2015); Dkt. 114.

On May 5, 2016, Simon filed a motion for summary judgment. Dkt.139. On June 15, 2016, IPC filed a motion for summary judgment. Dkt. 163. On September 2, 2016, the Court denied the motions without prejudice because the Court broadened the scope of discovery. Dkt. 177.

On June 13, 2018, Defendants filed motions for summary judgment. Dkts. 187, 189. On July 9, 2018, McKown responded. Dkts. 198, 200. On July 13, 2018, Defendants replied. Dkts. 207, 209.

## II. FACTUAL BACKGROUND

On November 20, 2005, at approximately 11:30 a.m., Dominick Maldonado ("Maldonado") arrived at the food court of the Tacoma Mall wearing a black trench coat and carrying a guitar case. Dkt. 199-1 at 22. Underneath the trench coat and inside the guitar case were an assault rifle, a semi-automatic pistol, and a substantial amount of ammunition. *Id*. Several mall patrons remember seeing Maldonado that morning. Christopher Winters was in the food court and noticed that Maldonado "looked strange and somewhat out of place." *Id*. at 36. William Mitchell saw Maldonado walking through the crowd really fast and bumping into people appearing like he was in a bad mood. *Id*. at 41. Maldonado claimed that he came to the mall hoping someone would

stop him and that, while he was at the bathroom near the food court, he made a bunch of noise hoping to attract attention. *Id*. at 47.

Regarding security at that time, the mall's security officers were all in the security office at the time of the shooting. *Id*. at 5–6; Dkt. 199-2 at 137–38. The mall did not have security cameras or a mall-wide intercom system that was available for security. *Id*. at 139–40.

After approximately 40 minutes of walking around the mall, Maldonado went into a vacant hallway. He started to smoke a cigarette and load ammunition into his weapons. Dkt. 145, ¶¶ 5, 6. Once the weapons were loaded, Maldonado exited the hallway and started shooting. *Id*. ¶ 7.

McKown heard the gunfire and took refuge in one of the stores. Although McKown initially drew his concealed weapon for protection, he holstered his weapon when the gunfire stopped. Dkt. 199-1 at 52–53, ¶ 2. Simon selectively cites McKown's deposition to convey the impression that McKown became a vigilante determined to stop Maldonado, Dkt. 189 at 4–5, yet is seems undisputed that McKown placed his weapon back in his waistband before he left his defensive position. McKown asserts that he hid his weapon because he wanted to survey the area outside the store and didn't want to be shot by police if they were in the mall. Dkt. 199-1 at 52–53, ¶ 2. Once he exited the store, he came face to face with Maldonado and became Maldonado's last victim. *Id*. ¶¶ 2–4.

One of the main issues of law in this case is the foreseeability of the attack. The Court previously granted Defendants' summary judgment motions because, based on the

evidence presented at the time, the Court concluded that Maldonado's attack was not a foreseeable danger. The Washington Supreme Court held that the foreseeability of an attack may be based on events at the particular location as well as the landowner's institutional knowledge. *McKown*, 182 Wn.2d at 768 (landowner owes business visitors a duty when, "based on the *landowner's past experience*, the *place* of the business, or the *character* of the business, there is a likelihood that harmful conduct of third parties will occur on his premises."). In light of this holding, McKown requested discovery regarding Simon's institutional knowledge gained from managing over 300 malls. McKown asserts that "many of Simon's policies, protocols and materials that it designed and implemented for a variety of its mall locations provide clear and irrefutable evidence that Simon viewed mall shootings as a foreseeable event." Dkt. 195 at 4. For example, in 2003, Simon created a media response plan for mall representatives if a shooting occurred in one of its malls. Dkt. 199-1 at 287 ("*The following statement is for holding purposes only. It should only be delivered verbally in response to any media inquiries that you may receive regarding the recent shooting on mall property.*").

Simon also owned the Mall of America ("MOA") prior to and during the incident in question. The MOA is a gigantic property that hosts approximately 100,000 people per day and over 40 million per year. Due to its size, law enforcement has identified the MOA as a potential target for terrorists. In response, MOA has developed an "active shooter" response. Dkt. 190-4. Although the response plan may have been sent to Simon's other properties, it appears that this was a particular plan for a particular

property, and Simon did not mandate that its other properties implement this strategy to protect visitors from third-party shooters.

On June 21, 2005, an active shooter entered Simon's Aurora Mall in Aurora, Colorado. Dkt. 199-2 at 5. Three people were shot and one person died as a result of the attack. *Id*. This event occurred approximately four months before Maldonado's attack, and the Aurora Mall appears to be similar in size to the Tacoma Mall.

McKown has also submitted evidence establishing that four other Simon properties had emergency response plans. Dkt. 192 at 73–83. Although the plans refer to "terrorism" events, McKown does not cite, and the Court is unable to locate, any reference to "active shooter" events.

## III. DISCUSSION

Defendants move for summary judgment arguing that they did not owe McKown a duty to protect him from Maldonado's criminal acts. In the alternative, Defendants argue that they are entitled to the affirmative defense of assumption of risk based on McKown's actions of leaving his position and encountering Maldonado.

**A. Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Duty**

The Washington Supreme Court adopted the Restatement (Second) of Torts § 344 (1965) and its comments in holding that a landowner has a duty to protect business invitees in two situations. *McKown*, 182 Wn.2d at 766–69. First, a duty arises "where the landowner knows or has reason to know of immediate or imminent harm . . . ." *Id*. at 768. Second, a duty arises when the landowner "knows, or has reason to know, based on the *landowner's past experience*, the *place* of the business, or the *character* of the business, there is a likelihood that harmful conduct of third parties will occur on his premises." *Id*.

In this case, McKown argues that Simon's duty arose under both theories. The Court rejects McKown's first theory. It is undisputed that the mall's security personnel were not patrolling the area Maldonado paced and, therefore, Defendants did not know of an immediate or imminent harm. Whether they should have had reason to know is based on the assumption that security personnel would have observed everything the mall patrons observed about Maldonado. Even assuming this to be true, McKwon has failed to submit sufficient evidence to establish an immediate or imminent harm. Maldonado was described as out-of-place, in a bad mood, and making noises that attracted some attention. Yet, none of the witnesses perceived a threat or felt that their safety was in danger. Pacing around looking odd for 40 minutes is different than brandishing a weapon for a certain amount of time or arbitrarily yelling threats at others. In fact, it is doubtful that an officer would have even had reasonable suspicion to stop Maldonado if the officer had observed Maldonado prior to the shooting. *See*, *e.g*., *United States v. Manzo-Jurado*,

457 F.3d 928, 935 (9th Cir. 2006) ("to establish reasonable suspicion, an officer cannot rely solely on generalizations that, if accepted, would cast suspicion on large segments of the lawabiding population. Seemingly innocuous behavior does not justify an investigatory stop unless it is combined with other circumstances that tend cumulatively to indicate criminal activity.") (citations omitted). Therefore, the Court grants Defendants' motion on McKown's theory that Defendants knew or had reason to know that Maldonado posed an immediate or imminent risk to the safety of the mall patrons.

Regarding the second theory, McKown confuses the existence of a duty with the scope of the duty. Specifically, McKown focuses on what should have been done to protect mall patrons rather than whether Defendants were required to do anything to protect patrons from active shooters. *See McKown*, 182 Wn.2d at 763–64 (existence of duty is a question of law for the court whereas scope of duty is a question of fact for the jury). Regardless, the Court finds that McKown has submitted sufficient evidence to establish the existence of a duty. Simon was well aware of and actively prepared for active-shooter events at the MOA. Although the Court agrees with Simon that the MOA is a unique property, Simon created an active shooter media package to be utilized at all properties. Moreover, the Aurora Mall shooting occurred five months prior to the instant attack placing Simon on notice that such attacks were foreseeable at properties other than the MOA. Taken together, all of this evidence establishes that Simon had reason to know that there existed a likelihood of harmful conduct at the Tacoma Mall. Therefore, the

Court concludes that Simon owed McKown a duty to use ordinary care to protect him from active shooters and denies Defendants' motions on this issue.[1]

The Court notes that the scope of that duty is a question of fact for the jury. For example, Simon's duty does not necessarily mean that it must post armed officers at every entrance to the mall. A reasonable juror could simply conclude that a working intercom system to warn patrons of an ongoing active shooter event is the extent of Simon's duty. As such, the majority of the arguments in the parties' briefs are truly arguments that should be presented to the jury during closing.

**C. Assumption of Risk**

Defendants argue that McKown assumed the risk of being shot by Maldonado relieving Defendants of their duty to protect him. Dkt. 187 at 19–22; Dkt. 189 at 15–17. In Washington, the assumption of risk may be an affirmative defense or amount to contributory negligence. *See*, *e.g.*, *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 636 (2010). Defendants' motions rely on the affirmative defense theories, which are express and implied primary assumption of risk. *Id*. Both theories "share the same elements of proof: 'The evidence must show the plaintiff (1) had full subjective understanding (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk.'" *Id*. (quoting *Kirk v. Wash. State Univ.*, 109 Wn.2d 448, 453 (1987). Defendants

---

[1] The Ninth Circuit held that "[i]f, on remand, the district court concludes that Simon may be liable to McKown, then IPC may be liable to the same extent." Dkt. 113 at 4. McKown argued that IPC's duty is coextensive with Simon's duty. Dkt. 200. IPC did not contest this argument in its reply. *See* Dkt. 209. Thus, the Court concludes that the duties are coextensive and declines to evaluate IPC's institutional knowledge of active shooting events.

must show that McKown "knowingly and voluntarily chose to encounter the risk." *Jessee v. City Council of Dayton*, 173 Wn.App. 410, 414 (2013) (citing *Erie v. White*, 92 Wn.App. 297, 303 (1998)).

In this case, McKown has shown that material questions of fact exist as to both knowledge and voluntariness. First, McKown had knowledge of the risk if he, "at the time of decision, actually and subjectively knew . . . all facts that a reasonable person in the plaintiff's shoes would want to know and consider" at the time he chose to incur the risk. *Id*. (citing *Home v. N. Kitsap Sch. Dist.*, 92 Wn.App. 709, 720 (1998)). This requires that the plaintiff have specific, rather than generalized, knowledge of risk. *Id*. at 414–15 (citing *Home*, 92 Wn.App at 720–21). Defendants have failed to show that McKown knew all of the facts that a reasonable person would want to know when he left the store to enter the general mall area. For instance, McKown asserts that he put his weapon back in his waist belt because he did not want to be shot by the police. A rational inference from this fact is that McKown did not know that Maldonado was still actively shooting in the mall or that the police were neither on the scene nor in control of the situation. Thus, at least one question of fact remains regarding McKown's knowledge.

Second, Defendants must show that McKown encountered Maldonado "despite knowing of a reasonable alternative course of action." *Home*, 92 Wn.App at 721. "A plaintiff's actions are voluntary if she voices concern about a risk, but ultimately accepts the risk." *Id*. at 721–722 (quoting Restatement (Second) of Torts § 496E cmt. a (1965)). Defendants have failed to show that McKown either voiced concern about being shot by Maldonado or knew of a reasonable alternative course of action. It is true that McKown

could have stayed in his original position and not have been shot. Defendants, however, have failed to show that McKown knew that staying put was a reasonable alternative to engaging Maldonado or being shot. At the very least, McKown has shown that questions of fact exist for the factfinder. Therefore, the Court denies Defendants motions on McKown's assumption of risk.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants motions for summary judgment (Dkts. 187, 189) are **GRANTED in part** on the issue of whether Defendants knew or had reason to know that Maldonado posed an immediate or imminent threat and **DENIED in part** on all other issues.

Dated this 20th day of August, 2018.

BENJAMIN H. SETTLE
United States District Judge